William C. Wilson, SBN: 149683
bwilson@wilsongetty.com
Kim S. Cruz, SBN: 177406
kcruz@wilsongetty.com
Ryan G. Canavan, SBN: 313990
rcanavan@wilsongetty.com
Evan J. Topol, SBN: 274932
etopol@wilsongetty.com
WILSON GETTY LLP
12555 High Bluff Drive, Suite 270
San Diego, California 92130
Telephone:      858.847.3237
Facsimile:      858.847.3365
Attorneys for Defendant SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER (erroneously sued and served as REDWOOD SPRINGS HEALTHCARE CENTER and SPRUCE HOLDINGS, LLC)

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA STERLING, individually and as Successor in Interest to the Estate of Esther Soliz, deceased; SYLVIA JONES; and LOUIS SOLIZ,<br><br>Plaintiffs,<br><br>vs.<br><br>REDWOOD SPRINGS HEALTHCARE CENTER; SPRUCE HOLDINGS, LLC; RICHARD SOLIZ (PURSUANT TO CCP §382); THERESA RUSSELL (PURSUANT TO CCP §382); ANGELA HERNANDEZ (PURSUANT TO CCP §382) and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No. 1:21−CV−00872−NONE−SKO<br><br>[Removal from Superior Court of California, County of Tulare Case No. VCU286688]<br><br>**DEFENDANT SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>United States Magistrate Judge:  Sheila K. Oberto<br><br>Hearing Date: August 5, 2021<br>Hearing Time: 9:30 a.m.<br>Courtroom: Courtroom 4 |

TO THE COURT AND ALL PARTIES HEREIN THROUGH THEIR COUNSEL OF RECORD:

Defendant, SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER ("Defendant"), hereby submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Remand.

1

1      This Opposition is based on this Notice of Motion and Motion, the Memorandum of Points and

2  Authorities, the Declarations of Ryan Canavan, Esq. and Kim Cruz, Esq. and exhibits thereto filed

3  concurrently herewith, the concurrently filed Request for Judicial Notice and exhibits attached thereto,

4  as well as the pleadings filed herein, and any other such oral and/or documentary evidence or argument

5  which may be presented at, before, or during the hearing on Plaintiffs' Motion to Remand.

6

7  Dated: July 22, 2021                    WILSON GETTY LLP

8

9                                       By: /s/ Evan J. Topol

10                                          William C. Wilson
                                            Kim S. Cruz
11                                          Ryan G. Canavan
                                            Evan J. Topol

12                                       Attorneys for Defendant SPRUCE HOLDINGS, LLC dba
13                                       REDWOOD SPRINGS HEALTHCARE CENTER
                                         (erroneously sued and served as REDWOOD SPRINGS
14                                       HEALTHCARE CENTER and SPRUCE HOLDINGS,
                                         LLC)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

## <u>TABLE OF CONTENTS</u>

1.     MEMORANDUM OF POINTS AND AUTHORITIES........................................................1

    I.     SUMMARY OF ARGUMENT ........................................................1

    II.     THE PREP ACT SUPPORTS FEDERAL QUESTION JURISDICTION .............2

        A.     The PREP Act Is a Complete Preemption Statute ........................................3

        B.     HHS "Controlling" Declarations Clarify the Breadth of PREP Act Immunity and Preemption ........................................7

        C.     Appropriate Deference Must be Given to the HHS Declaration ................8

        D.     Prior District Court Cases Too Narrowly Interpret the PREP Act and Misconstrue Congress' and HHS's Intent.........................................11

    III.     PLAINTIFFS' ALLEGATIONS FALL SQUARELY UNDER THE PREP ACT ........................................12

    III.     FEDERAL JURISDICTION IS WARRANTED UNDER *GRABLE* ........................15

    IV.     THIS COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER STATUTE ........................................16

        A.     Defendant Was "Acting Under" the Direction of a Federal Officer .............16

        B.     There is a Causal Nexus between Plaintiffs' Claims and the Actions taken by Defendant Pursuant to Federal Direction ........................................20

        C.     Defendants Have Raised a Colorable Defense Based on Federal Law ..........20

## TABLE OF AUTHORITIES

### CASES

*Arizona v. Manypenny,* 451 U.S. 232 (1981) ......................................................... 16

*Auer v. Robbins*, 519 U.S. 452 (1977) .................................................................... 5

*Avco Corp, v. Aero Lodge no. 735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557 (1986) ................................................................................................ 4

*Bakalis v. Crossland Savings Bank,* 781 F.Supp. 140 (E.D.N.Y. 1991) ............... 16

*Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000) ................ 4

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003) ................................. 3, 5, 6, 10

*Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir. 2012) ........... 4

*Campbell v. Kane, Kessler, P.C.,* 144 Fed. Appx. 127 (2d Cir. 2005) ..................... 9

*Caterpillar Inc. v. Williams,* 482 U.S. 386 (1987) .................................................. 9

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........ 5, 7, 8

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000) ..................................................... 5

*Dupervil v. All. Health Operations, LLC*, No. 20CV404, 2021 WL 355137 *1 (E.D.N.Y. Feb. 2, 2021) ................................................................................................................ 9, 10, 11

*Estate of Jones v. St. Jude Operating Company, LLC*, 2020 WL 8361924 *1 (D. Or. Oct. 14, 2020) .... 11

*Estate of Voncile R. McCalebb v. AG Lynwood, LLC*, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, *1 (C.D. Cal. Mar. 1, 2021) ............................................................................... 10

*Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620 *1 (E.D. Tex. Feb. 11, 2021) ..... 18

*Gilbert Garcia et al v. Welltower OpCo Group LLC,* 2021 WL 492581 *1 (C.D. Cal. Feb. 10, 2021) ........ 5, 10, 12, 14

*Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237 (9th Cir. 2017) ..... 16

*Gunter v. CCRC Opco-Freedom-Square, LLC*, 2020 WL 8461513 *1 (M.D. Fla. Oct. 29, 2020) ..... 11

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Association of Philadelphia*, 790 F.3d 457 (3rd. Cir. 2015) .................................................. 16

*In re Miles*, 430 F.3d 1083 (9th Cir. 2005) ............................................................. 4

*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005) ......................................... 4, 9

*Jefferson County, Ala. v. Acker*, 527 U.S. 423 (1999) ........................................... 16

*Jones v. St. Jude Operating Co.*, 2021 WL 900672 *1 (D. Or. Feb. 16, 2021) ........ 11

**TABLE OF AUTHORITIES**

*Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833 (8th Cir. 2020) ....... 10

*Lopez v. Advanced HCS, LLC*, 2021 WL 1259302 *1 (N.D. Tex., Apr. 5, 2021) ....... 12

*Lundeen v. Canadian Pacific R. Co.*, 532 F.3d 682 (8th Cir. 2008) ....... 4

*Maglioli v. Andover Subacute Rehabilitation Center*, 478 F.Supp.3d 518 (Aug. 12, 2020) ....... 11

*Mitchell v. Advanced HC, LLC*, 2021 WL 1259302 *1 (N.D. Tex., Apr. 5, 2021) ....... 11

*Moore-Thomas v, Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009) ....... 10

*Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC,* No. 1:21-cv-334 (W.D. La.. Apr. 30, 2021) ....... 4, 8, 9, 10, 11, 12

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998) ....... 3

*Robertson v. Big Blue Healthcare, Inc.*, 2021 WL 764566 *1 (D. Kan. Feb. 26, 2021) ....... 11

*Rodina v. Big Blue Healthcare, Inc.*, 2020 WL 4815102 *1 (D. Kan. Aug. 19, 2020) ....... 11

*Romano v. Kazacos*, 609 F.3d 512 (2d Cir. 2010) ....... 3

*Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) ....... 20

*Rural Community Workers Alliance v. Smithfield*, 2020 WL 2145350 *1 (W.D. Mo. May 5, 2020) ....... 21

*Schuster v. Percheron Healthcare, Inc.*, 493 F.Supp.3d 533 (N.D. Tex. Apr. 1, 2021) ....... 12

*Sherod v. Comprehensive Heatlhcare Management Services, LLC*, 2020 WL 6140474 *1 (W.D. Penn. Oct. 16, 2020) ....... 11

*Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011) ....... 4

*Smith v. Colonial Care Center, Inc.* 2021 WL 1087284 *1 (C.D. Cal. Mar. 19, 2021) ....... 11

*Smith v. The Bristol at Tampa Rehabilitation and Nursing Center*, 2021 WL 100376 *1 (M.D. Fla. Jan. 12, 2021) ....... 11

*Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015) ....... 4

*Stone v. Long Beach Healthcare Center, LLC*, 2021 WL 1163572 *1 (C.D. Cal. Mar. 26, 2021) ....... 11

*Sullivan v. American Airlines, Inc.*, 424 F.3d 267 (2d.Cir. 2005) ....... 10

*United States v. Mead Corp*, 533 U.S. 218 (2001) ....... 8

*Vaden v. Discover Bank*, 556 U.S. 49 (2009) ....... 4

*Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994) ....... 21

*Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007) ....... 16, 19

*Willingham v. Morgan*, 395 U.S. 402 (1969) ....... 20

-ii-

**TABLE OF AUTHORITIES**

*Winn v. California Post Acute, LLC*, 2021 WL 1292507 *1 (C.D. Cal., Apr. 6, 2021)    11

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998)    16-17, 20

**STATUTES**

28 U.S.C. § 1442(a)(1) .......................................................................................................16

42 U.S.C § 247d-6d(b)(8) ...................................................................................................6

42 U.S.C § 247d-6d(e)(3) ...................................................................................................6

42 U.S.C. § 1395aa ..............................................................................................................17

42 U.S.C. § 1396r .................................................................................................................17

42 U.S.C. § 247-6d(b)(4) .....................................................................................................2

42 U.S.C. § 247d-6d ............................................................................................................6

42 U.S.C. § 247d-6d(b)(1) ...................................................................................................2

42 U.S.C. § 247d-6d(b)(7) ...................................................................................................7

42 U.S.C. § 247d-6d(d)(1) ...................................................................................................6

42 U.S.C. § 1395i-3 ..............................................................................................................17

42 U.S.C. § 247d-6d(a) ........................................................................................................12

42 U.S.C. § 247d-6d(a)(1) ...............................................................................................2,4

42 USC § 247d-6d (a)(2)(B) ................................................................................................13

42 USC § 247d-6d (i) (1) ......................................................................................................12

42 U.S.C. § 5195c(b)(3) .......................................................................................................19

42 U.S.C. § 5195c(e) ............................................................................................................19

**REGULATIONS**

21 C.F.R. § 878.4040 ............................................................................................................13

42 C.F.R. § 483.1 through 42 C.F.R. §483.95 ......................................................................17

42 C.F.R. § 488.10 ................................................................................................................17

-iii-

**TABLE OF AUTHORITIES**

1.     **MEMORANDUM OF POINTS AND AUTHORITIES**

   **I.     SUMMARY OF ARGUMENT**

   This case involves the death of Esther Soliz ("Decedent"), who allegedly contracted COVID-19 during her admission to Redwood Springs Healthcare Center ("Redwood Springs") and later died due to the virus on April 28, 2020.  The Complaint was filed in State court and alleges causes of action for Elder Abuse, Willful Misconduct, and Wrongful Death against Defendants.  (Def.'s Request for Judicial Notice ("RFJN") Ex. "A".)

   On June 1, 2021, Defendant removed this action to Federal court.  (RFJN Ex. "H".)  Plaintiffs now seek remand and contend that the Public Readiness and Emergency Preparedness Act (hereinafter the "PREP Act") does not apply as the allegations in their Complaint do not relate to covered countermeasures.  Plaintiffs claim that Redwood Springs caused Ms. Soliz's death from COVID-19 by failing to take appropriate safety measures, including the distribution and use of Personal Protective Equipment and monitoring employees and staff for COVID-19 symptoms.  (RFJN Ex. "A" pg. 4, ¶ 12.)  While Plaintiffs argue these claims do not fall within the PREP Act, such claims by their very nature relate to the use of covered countermeasures, including personal protective equipment ("PPE"), COVID-19 testing, and/or the management and operation of Defendants' countermeasures program, bringing the claims squarely within the purview of the PREP Act.  Plaintiffs cannot allege Ms. Soliz's death was due to a failure to take appropriate safety measures, including the distribution and use of PPE to prevent COVID-19, without implicating covered countermeasures under the PREP Act since these covered countermeasures are the main line of defense against and the centerpiece of any infection control program used to prevent the spread of the virus that causes COVID-19.  (RFJN, Exs. "L" through "DD".)

   Plaintiffs further contend that federal question jurisdiction must be based solely on claims in the Complaint and cannot be created by invoking a federal statute as a defense.  However, **the PREP Act is a complete preemption statute** and complete preemption is an exception to the well-pleaded complaint rule.

   Plaintiffs also dispute the jurisdiction of this Court under the federal officer statute.  However, as established herein, the federal government targeted and enlisted skilled nursing facilities, including

Redwood Springs, as part of the nation's critical infrastructure to assist and carry out the federal effort to contain and prevent the spread of COVID-19.  The healthcare response to the pandemic has been coordinated at a national level by the United States Department of Health and Human Services ("HHS"), the Centers for Disease Control and Prevention ("CDC"), and the Centers for Medicare and Medicaid Services ("CMS"), through the issuance of detailed and evolving instructions to skilled nursing facilities to direct their operational response to the pandemic.  As part of the nation's critical infrastructure, Defendants were therefore acting under the direction of a federal officer with respect to the response to the COVID-19 pandemic and their treatment of Esther Soliz.  Plaintiffs' claims pertaining to the alleged acts and omissions of Defendant, while acting under the direction of the federal government, are properly tried in Federal Court.

## II.     THE PREP ACT SUPPORTS FEDERAL QUESTION JURISDICTION

The PREP Act was enacted in 2005 to encourage the development and deployment of covered countermeasures in response to public health emergencies. With the PREP Act, Congress sought to alleviate liability concerns associated with delivering countermeasures to the public by providing protections for healthcare providers involved in the planning, distribution and dispensing of such countermeasures.  The liability immunity provided in the PREP Act ensures that healthcare providers such as Redwood Springs are not subject to lawsuits which tax their time and energy, when such resources should be directed toward resident care.

The PREP Act empowers the Secretary of HHS to issue a declaration providing immunity for "covered persons" to suits and liability under federal and state law relating to the administration of a "covered countermeasure" during a health emergency.  42 U.S.C. §247d-6d(a)(1).  Section (b) of the PREP Act provides that if the Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency, the Secretary may make a declaration setting forth that subsection (a) is in effect with respect to one or more Covered Countermeasures under conditions as the Secretary may specify in the Declaration.  42 U.S.C. § 247d-6d(b)(1) and (4).

On March 10, 2020, the United States HHS Secretary issued a Declaration invoking the PREP Act for the COVID-19 pandemic, which was effective as of February 4, 2020. (RFJN Ex. "I"- 85 Fed. Reg. 15198-15201.)  On April 10, 2020, the HHS Secretary issued an Amended Declaration under the

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   PREP Act, which added approved respiratory protective devices as a covered countermeasure under the

2   Act. (RFJN Ex. "J"- 85 Fed. Reg. 21012-02.)  On June 4, 2020, the Secretary amended the Declaration

3   to clarify that covered countermeasures include qualified products that limit the harm COVID-19 might

4   otherwise cause. (RFJN Ex. "K"- 85 Fed. Reg. 35100.)

5       Several Advisory Opinions ("AOs") have also been issued by the HHS Office of the General

6   Counsel ("OGC"). (RFJN Exhibits "EE", "GG" and "HH.") On December 9, 2020, the HHS Secretary

7   published a Fourth Amendment to the Declaration under the PREP Act, which incorporates the AOs

8   into the Declarations itself.  (RFJN Exhibit "II"- 85 Fed. Reg. 79191, 79194-79195.)

9       **A.  The PREP Act Is a Complete Preemption Statute**

10      "A civil action filed in state court may be removed to federal court if the claim is one 'arising

11  under' federal law.  To determine whether a claim arises under federal law, [courts] examine the well-

12  pleaded allegations of the complaint and ignore potential defenses. . . "  *Beneficial Nat. Bank v.*

13  *Anderson*, 539 U.S. 1, 6 (2003).  However, the "corollary" to this rule is that "a plaintiff may not defeat

14  federal subject-matter jurisdiction by omitting to plead necessary federal questions", i.e., "artful

15  pleading."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475.  "If a court concludes that a plaintiff has

16  'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears

17  on the face of plaintiff's complaint." *Id*.  "The artful pleading rule applies when Congress has either (1)

18  so completely preempted, or entirely substituted, a federal law cause of action for a state one that

19  plaintiff cannot avoid removal by declining to plead necessary federal questions, or (2) expressly

20  provided for the removal of particular actions asserting state law claims in state court." *Romano v.*

21  *Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010) (internal citations and quotations omitted).

22      In *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003), the Supreme Court explained that

23  "[w]hen a federal statute completely pre-empts the state-law cause of action, a claim which comes

24  within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on

25  federal law."  Complete preemption exists when the federal statute at issue provides for an exclusive

26  cause of action and sets forth the procedures and remedies governing the cause of action.  *Id. See also In*

27  *re WTC Disaster Site*, 414 F.3d 352, 380 (2d Cir. 2005).  In *Beneficial*, the Court held that even though

28  Congress did not explicitly provide for removal of preempted claims, the provisions collectively

-3-

1    superseded both substantive and remedial provisions and created an exclusive federal remedy.  *Id.* at 11.

2          Since the Supreme Court first articulated the doctrine of complete preemption in *Avco Corp, v.*

3    *Aero Lodge No. 735*, 390 U.S. 557, 559 (1986), applying the doctrine to the Labor Management

4    Relations Act, it has been extended to the Air Transportation Safety and System Stabilization Act

5    ("ATSSSA") (*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005)); the Bankruptcy Code (*In re Miles*,

6    430 F.3d 1083 (9th Cir. 2005)); the Carmack Amendment to the Interstate Commerce Act (*Smallwood*

7    *v. Allied Van Lines, Inc.*, 660 F.3d 1115 (9th Cir. 2011)); the Copyright Act (*Spear Marketing, Inc. v.*

8    *BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015)); the Federal Communications Act (*Bastien v. AT&T*

9    *Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000)); the Federal Deposit Insurance Act (*Vaden v.*

10   *Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009)); the Federal Railroad Safety

11   Act (*Lundeen v. Canadian Pacific R. Co.*, 532 F.3d 682 (8th Cir. 2008)); and the Securities Litigation

12   Uniform Standards Act (SLUSA) (*Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir.

13   2012)).  Contrary to Plaintiffs' claims, Courts have found complete preemption applies to more than

14   only four federal statutes.

15         The Court in *Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC,* 1:21-cv-334 (W.D.

16   La. Apr. 30, 2021), recently found that the PREP Act is a complete preemption statute.  (RFJN Ex.

17   "RR".)  The *Rachal* Court found the PREP Act analogous to ATSSSA, which was passed following the

18   September 11, 2011 terrorist attacks, as both statutes: (1) create an administrative no-fault compensation

19   fund; (2) provide broad immunity from suit for certain entities/individuals; (3) create an exclusive

20   federal cause of action for certain residual claims as the exclusive judicial remedy for damages; and (4)

21   specifies an exclusive federal venue for suits brought under the federal cause of action.  *Rachal*, at n. 3,

22   *citing In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005).

23         The *Rachal* court concluded that Congress intended "that the PREP Act exclusively encompass

24   'claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use

25   by an individual of a covered countermeasure.  [42 U.S.C.] § 247d-6d(a)(1).  Accordingly, to the extent

26   Plaintiff's alleged loss [that] . . . arose out of, related to, or resulted from the administration  . . . of a

27   'covered countermeasure,' this Court has federal question jurisdiction to apply the provisions of the

28   PREP Act."  *Id*.

*In Gilbert Garcia et al v. Welltower OpCo Group LLC,* 2021 WL 492581 *6 (C.D. Cal. Feb. 10, 2021), Judge James V. Selna of the U.S. District Court for the Central District of California also ruled that the PREP Act is a complete preemption statute.

The HHS General Counsel has also weighed in on this issue noting that "[t]he sine qua non of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." (RFJN Ex. "HH"- AO 21-01, pg. 2.) This AO is binding on the Court, as the Secretary has incorporated all HHS AOs pertaining to COVID-19 into the PREP Act's implementing Declaration and proclaimed that the Declaration "must" be construed in accordance with the opinions. (RFJN Ex. "II"- 85 Fed. Reg. 79190, 79194-79195.) Thus, the GC AOs are no longer "advisory" as the opinions now have the same controlling weight as the Declaration and the PREP Act itself. Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the Federal courts. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984); *Auer v. Robbins*, 519 U.S. 452, 461 (1997). AOs not formally incorporated into Amendment Four are entitled to *Skidmore* "respect" to the extent they interpret the PREP Act. *See Christensen v. Harris Cty.*, 529 U.S. 576 (2000). However, to the extent the AOs interpret HHS's own Declaration language, those AOs are entitled to *Auer* controlling deference. *See Auer v. Robbins*, 519 U.S. 452, 461 (1977) (an agency's interpretation of its own regulations are controlling unless "plainly erroneous or inconsistent with the regulation.")

The first prong of the *Beneficial* analysis is clearly met. There is no question that the PREP Act broadly preempts all state law claims falling within its purview. Under 42 U.S.C.A. § 247d-6d(a)(1), a "covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or use by an individual of a covered countermeasure if a declaration . . . has been issued with respect to such countermeasure." In the subsection conspicuously titled, "PREEMPTION OF STATE LAW", the statute provides, in pertinent part, that "[d]uring the effective period of a declaration . . . no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—(A) is different from, or is in conflict

-5-

1  with, any requirement applicable under this section; and (B) relates to the. . . dispensing or
2  administration. . . of the covered countermeasure. . . " 42 U.S.C § 247d-6d (b)(8).

3      The second prong of the *Beneficial* analysis is also met.  The PREP Act establishes a set of
4  exclusive federal remedies for any claim preempted, and the procedures applicable to such actions.
5  Under 42 U.S.C. § 247d-6d(d)(1) "the sole exception to the immunity from suit and liability of covered
6  persons . . . shall be for an exclusive Federal cause of action against a covered person for death or
7  serious physical injury proximately caused by willful misconduct."  The statute further sets forth the
8  procedures for suit. Pursuant to the provisions set forth in subsection (e)(1), titled "**Exclusive Federal**
9  **Jurisdiction**," any action for willful misconduct must be filed in the U.S. District Court for the District
10  of Columbia. Such claims are also subject to heightened pleading requirements, including requirements
11  for pleading with particularity, verification of and submission of a physician declaration in support of
12  the complaint. 42 U.S.C § 247d-6d(e)(3).   Here, Plaintiffs have alleged a cause of action for Willful
13  Misconduct yet failed to file the claim in the proper Court.

14      Hence, the PREP Act sets up an exclusive cause of action for the claims asserted by Plaintiffs as
15  well as the procedures and remedies governing such cause of action.  For claims barred pursuant to the
16  immunity under 42 U.S.C. § 247d-6d that do not assert "willful misconduct," the exclusive remedy for
17  relief is established under Section 247d-6e, which permits an individual to claim no-fault benefits
18  through the Covered Countermeasure Process Fund for a "covered injury directly caused by the
19  administration or use of a covered countermeasure."  It is clear that Congress sought to establish a set of
20  exclusive federal remedies for claims relating to covered countermeasures.  More simply put, state
21  causes of action for claims relating to covered countermeasures are impermissible as a claimant must
22  either file a claim through the established fund or a Complaint for Willful Misconduct under the PREP
23  Act in the District Court for the District of Columbia.

24      The PREP Act clearly satisfies both prongs of the "complete preemption" analysis thus,
25  preempting State law claims which fall within its scope.

26

27

28

**B.   HHS "Controlling" Declarations Clarify the Breadth of PREP Act Immunity and Preemption**

Under the PREP Act, Congress has not only provided immunity claims arising out of Covered Countermeasures, it has delegated regulatory authority to the HHS Secretary.  *See* 42 U.S.C. § 247d-6d(b)(7).  Specifically, the PREP Act provides that "*[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection*." [Emphasis added.]

Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. *See Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984).  As Congress has expressly delegated the duty to apply and interpret the Act to the Secretary, the Declaration of the HHS Secretary (including all amendments thereto) are entitled to *Chevron* deference.

In issuing the PREP Act Declaration, the HHS Secretary intended for HHS' private sector partners, such as Redwood Springs, to receive the exclusive federal jurisdiction and immunity protections provided by the PREP Act. In response to erroneous interpretations of this express Congressional intent, HHS has issued several clarifying AOs and Amendments to the PREP Act Declaration which urge the application of a federal forum and immunity treatment for cases involving COVID-19 countermeasures.  In the Fourth Amendment to his Declaration, the HHS Secretary has declared that "there are substantial federal legal and policy interests . . .  in having a uniform interpretation of the PREP Act."  (RFJN Ex. "II"- 85 Fed. Reg. 79190, 79194.)  The HHS Secretary recognizes that "[t]hrough the PREP Act, Congress delegated to [HHS] the authority to strike the appropriate Federal-state balance."  *Id*.  On January 28, 2021, the Acting HHS Secretary for the Biden Administration issued the Fifth Amendment to the Declaration Under the PREP Act, which reiterates that "[t]he plain language of the Prep Act makes clear that there is complete preemption of state law" which "is justified to respond to the nation-wide public health emergency caused by COVID-19 . . ." (RFJN Ex. "JJ".)  In clear and controlling terms, HHS has declared that "[t]he PREP Act is a 'Complete Preemption' Statute."  (*See* RFJN Ex. "HH"- AO 21-01, p. 2 (noting that the PREP Act establishes an exclusive federal cause of action *and* vests exclusive jurisdiction in a federal court)).

**MEMORANDUM OF POINTS AND AUTHORITIES**

1        Recently, the Court in *Rachal v. Natchitoches Nursing & Rehabilitation Center, LLC,* 1:21-cv-

2   334 *11, acknowledged that deference should be afforded to the HHS AOs.  The Court, citing *United*

3   *States v. Mead Corp*, 533 U.S. 218, 220 (2001), noted that "an agency's interpretation may merit some

4   deference whatever its form, given the 'specialized experience and broader investigations and

5   information' available to the agency . . . and given the value of uniformity in its administrative and

6   judicial understandings of what a national law requires."  The Court further reasoned that even if

7   *Chevron* deference were not applicable, "[r]easonable agency interpretations carry 'at least some added

8   persuasive force' and may 'seek a respect proportional to their power to persuade.'"  The *Rachal* Court

9   concluded that HHS's interpretation of the PREP Act and its scope to be reasonable and entitled to

10   deference given:  "(i) the PREP Act's broad grant of authority to the HHS Secretary; (ii) the Secretary's

11   express incorporation of the OGC's Advisory Opinions into the Declarations for purposes of construing

12   the PREP Act; (iii) the complexity of the relevant statutory provisions; (iv) the technical nature of the

13   subject matter; and (v) the need for uniformity in the judiciary's interpretation of the PREP Act across

14   the United States."

       **C.   Appropriate Deference Must be Given to the HHS Declaration**

15

16        Even if the HHS Advisory Opinions do not have the same force and effect as a legislatively-

17   enacted statute, "it can still be apparent from the agency's generally conferred authority and other

18   statutory circumstances that Congress would expect the agency to be able to speak with the force of law

19   when it addresses ambiguity in the statute or fills a space in the enacted law", especially where the

20   agency's reasoning is valid. *United States v. Mead Corp.,* 533 U.S. 218, 228-229 (2001).  As such, "a

21   reviewing court has no business rejecting an agency's exercise of its generally conferred authority to

22   resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise …

23   but is obliged to accept the agency's position if Congress has not previously spoken to the point at issue

24   and the agency's interpretation is reasonable…."  *Id.* at 229 (internal citations omitted); *Chevron U. S.*

25   *A. Inc.* 467 U.S. at 843-44  ("a court may not substitute its own construction of a statutory provision for

26   a reasonable interpretation made by the administrator of an agency.")

27        Here, HHS is charged with administering the PREP Act.  Its interpretation that the PREP Act is a

28   complete preemption statute is "reasonable" as the *Rachal* court found, and it is based on the framework

of the Act, including its exclusive federal remedial scheme and the purpose and scope as applied to the COVID-19 pandemic.  This interpretation is sound, especially since other complete preemption statutes have analogous remedial schemes that involve both administrative and judicial remedies, like the ATSSSA, as also recognized by the *Rachal* court.  Courts have erred in rejecting HHS' interpretation, such as in *Dupervil v. All. Health Operations, LLC*, No. 20CV404, 2021 WL 355137 *1 (E.D.N.Y. Feb. 2, 2021).

The *Dupervil* Court also erred in concluding that the PREP Act's administrative remedy and exhaustion requirement defeat its completely preemptive effect.  *Dupervil*, 2021 WL 355137 at *10.  For example, the Supreme Court has adjudged the Labor Management Relations Act ("LMRA") to be a complete preemption statute. Thereunder, any state law claims that are substantially dependent on analysis of a collective bargaining agreement are preempted by Section 301 of the LMRA and must be brought in federal court. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987).  However, before an employee may bring a Section 301 claim in court, the employee must "'at least attempt to exhaust exclusive grievance and arbitration procedures established by the [collective] bargaining agreement.'" *Campbell v. Kane, Kessler, P.C.,* 144 F. App'x 127, 130 (2d Cir. 2005) (quotation omitted).  This is no different than the administrative exhaustion requirement before bringing suit for willful misconduct under the PREP Act.

Further, as set forth above, the PREP Act is analogous to another complete preemption statute, the ATSSSA.  Both statutes: (1) create an administrative no-fault compensation fund; (2) provide broad immunity from suit for certain entities/individuals; (3) create an exclusive federal cause of action for certain residual claims as the exclusive judicial remedy for damages; and (4) specifies an exclusive federal venue for suits brought under the federal cause of action.  *Rachal* v. *Natchitoches Nursing & Rehabilitation Center, LLC,* 1:21-cv-334 at n. 3, *citing In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005).

In contrast to the foregoing complete preemption statute with a remedial scheme which is structurally similar to the PREP Act, the *Dupervil* court mistakenly relies on *Sullivan v. American*

**MEMORANDUM OF POINTS AND AUTHORITIES**

*Airlines, Inc.*, 424 F.3d 267 (2d.Cir. 2005), which addressed the Railway Labor Act ("RLA")[1].  Unlike the PREP Act, the RLA provides an exclusive federal remedy for only certain types of disputes – between an employee and a carrier.  The Act does not provide an exclusive cause of action for disputes between an employee and its union.  Thus, "[w]ithout a federal cause of action between these parties, complete preemption is off the table." *Krakowski v. Allied Pilots Ass'n*, 973 F.3d 833, 837 (8th Cir. 2020).  Thus, the holding of *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267 (2d Cir. 2005), which the *Dupervil* court relied on extensively for the proposition that the creation of an administrative remedy precludes a finding of complete preemption, is distinguishable and should not be relied upon here.

Since the PREP Act provides an exclusive federal remedy for *all claims of loss* falling within its scope, the holding and reasoning of the *Sullivan* court, based on the RLA, is inapposite here.  It is wrong to conclude that the PREP Act is not a complete preemption statute by virtue of its combined administrative and judicial remedial scheme.  Like the LMRA and ATSSSA discussed above, the PREP Act creates an exclusive federal remedy for claims falling thereunder, involving both an administrative and judicial remedy.  The *Dupervil* Court erroneously ruled that "the PREP Act … provides no cause of action at all."  *Dupervil*, 2021 WL 355137, at *9.  And it is notable that the *Rachal* court just recently found the PREP Act to be a complete preemption notwithstanding its express acknowledgment of *Dupervil*.

As the foregoing clearly demonstrates, the requirement that a federal statute provide an exclusive federal remedy to have complete preemptive effect does not require that the remedy be solely "judicial" in nature.  The test is whether the federal statute "wholly displaces the state-law cause of action", which the PREP Act does. *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8 (2003).  The fact that the judicial remedy is combined with an administrative remedy does not change this result; the *Rachal* and *Garcia* courts apparently both agreed.  Thus, the *Dupervil* court should not have concluded that the PREP Act's comprehensive federal scheme, which includes a defined federal cause of action accompanied by an administrative remedy, equals "no similar exclusive cause or right of action." *Dupervil* at *11.

---

[1] The Court in *Estate of Voncile R. McCalebb v. AG Lynwood, LLC*, 2021 WL 911951, similarly mistakenly relies on the RLA case, *Moore-Thomas v, Alaska Airlines, Inc*. 553 F.S3d. 1241.

The PREP Act does not provide "primary" jurisdiction before any administrative agency. It instead provides for an exclusive cause of action to be filed in a specific venue combined with an administrative remedy, which is nearly identical to that of the ATSSSA, as the *Rachal* court aptly concluded.

### D.   Prior District Court Cases Too Narrowly Interpret the PREP Act and Misconstrue Congress' and HHS's Intent.

Many remand orders have erred by too narrowly defining the PREP Act term "administration", finding that claims of inaction do not fall within the purview of the PREP Act, or by failing to consider the true nature of the plaintiffs' claims. *See discussion infra,* pgs. 16-18; *contra Dupervil v. Alliance Health Operations, LCC*, 2021 WL 355137 *1 (E.D.N.Y. Feb. 2, 2021), *Jones v. St. Jude Operating Co.*, 2021 WL 900672 *1 (D. Or. Feb. 16, 2021), R*obertson v. Big Blue Healthcare, Inc.*, 2021 WL 764566 *1 (D. Kan. Feb. 26, 2021), *Smith v. Colonial Care Center, Inc.* 2021 WL 1087284 *1 (C.D. Cal. Mar. 19, 2021), *Stone v. Long Beach Healthcare Center, LLC*, 2021 WL 1163572 *1 (C.D. Cal. Mar. 26, 2021), and *Winn v. California Post Acute, LLC*, 2021 WL 1292507 *1 (C.D. Cal., Apr. 6, 2021).

The Secretary's Fourth Amendment to his Declaration, AO 21-01 (January 8, 2021) and AO 20-04 (October 22, 2020) abrogate all district court remand opinions which find that COVID-19 countermeasure must be administered physically to a resident, and abrogate all remand opinions finding certain allegations constitute a total "failure" to act, to- wit: *Maglioli v. Andover Subacute Rehabilitation Center*, 478 F.Supp.3d 518 (Aug. 12, 2020), *Rodina v. Big Blue Healthcare, Inc.*, 2020 WL 4815102 *1 (Aug. 19, 2020), *Estate of Jones v. St. Jude Operating Company, LLC*, 2020 WL 8361924 *1 (D. Or. Oct. 14, 2020), *Sherod v. Comprehensive Healthcare Management Services, LLC*, 2020 WL 6140474 *1 (W.D. Pa. Oct. 16, 2020), *Gunter v. CCRC Opco-Freedom-Square, LLC*, 2020 WL 8461513 *1 (M.D. Fla. Oct. 29, 2020).  Numerous courts continue to improperly rely on and follow these now abrogated decisions.

Insupportably, the Courts in *Stone,* 2021 WL 1163572 at *4, *Dupervil,* 2021 WL 355137 at *10-11, M*itchell v. Advanced HC, LLC*, 2021 WL 1259302 at *3 (N.D. Tex., Apr. 5, 2021), *Schuster v. Percheron Healthcare, Inc.*, 493 F.Supp.3d 533, 537 (N.D. Tex, Apr. 1, 2021), and *Lopez v. Advanced*

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   *HCS, LLC*, 2021 WL 1259302 at *3 (N.D. Tex., Apr. 5, 2021) avoided complete preemption by finding

2   the PREP Act does not provide a "substitute" or "exclusive" cause of action.  This is flatly incorrect as

3   shown by even just a quick read of the administrative Covered Countermeasures Process Fund process

4   and willful misconduct claims provisions of the PREP Act. §§ 247d-6e(b), (d) and 247d-6d(e).

5       *Garcia* and *Rachal* solidify the correct judicial analysis.  In these cases, that rightly afford HHS's

6   Declarations and AOs their due deference, the courts in *Garcia* and *Rachal* denied remand and confirmed

7   the PREP Act's immunity, sole federal cause of action and complete preemption.

8   **III.   PLAINTIFFS' ALLEGATIONS FALL SQUARELY UNDER THE PREP ACT**

9       The PREP Act provides "covered persons"[2] broad immunity from suit and liability under federal

10  or state law "with respect all claims for loss caused by, arising out of, relating to, or resulting from the

11  administration to or use by an individual of a covered countermeasure. . ."  42 U.S.C. § 247d-6d(a).

12      The definition of a "covered countermeasure" includes "qualified pandemic or epidemic

13  products" as well as approved respiratory protective devices.  42 U.S.C. § 247d-6d (i) (1).  The April 17,

14  2020 HHS OGC AO summarizes the requirements to meet the definition of a qualified pandemic or

15  epidemic product for the COVID-19 pandemic, noting that the product must be: (1) used for COVID-

16  19; and (2) approved, licensed, or cleared by FDA; authorized under an emergency use authorization

17  ("EUA"); described in an emergency use instruction; or used under either an Investigational New Drug

18  application or an Investigational Device Exemption.  (*See* 42 U.S.C. § 247d-6d (i) (7) and Def's RFJN

19  Ex. "EE", April 17, 2020 AO, pg. 4.).

20      The April 17, 2020 AO recognizes that "the number of products used for COVID-19 that are

21  approved, licensed or cleared [by the FDA] are too numerous to list."  However, the Opinion cites to

22  lists of medical devices that are covered by EUAs.  Notably, the lists include various forms of PPE (face

23  shields, gowns, shoe covers, non-surgical isolation gowns, surgical caps, properly labeled non-surgical

24  masks, and certain non-NIOSH approved respirators) and COVID-19 testing kits.  (*See* Def's RFJN Ex.

25  "EE" and Ex. "FF"- List of devices and therapeutics for which FDA EUAs have been issued.)  While

26  surgical masks, surgical gowns and oxygen delivery systems are not listed, such products are Class II

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

medical devices which are cleared by the FDA for use.  (*See* 21 C.F.R. §§ 878.4040 and 878.5454.) Thus, face shields, masks, gowns, gloves and other PPE as well as COVID-19 testing kits are "qualified pandemic or epidemic products" and "covered countermeasures" under the PREP Act, as such products are either FDA cleared/approved or are subject to an EUA.

Immunity under the PREP Act "applies to **any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the** . . .  distribution . . . **purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure**."  [Emphasis added.] 42 U.S.C. § 247d-6d (a)(2)(B).

In his initial Declaration, the HHS Secretary noted that the "PREP Act does not explicitly define the term 'administration' but assigns the Secretary the responsibility to provide relevant conditions in the Declaration."  In the Secretary's Declaration, "administration of a covered countermeasure" is defined as the "physical provision of the countermeasures to recipients *or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients*; *management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures*." [Emphasis added.]  (RFJN Ex. "I"- 85 Fed. Reg. 15198, 15200.)  Accordingly, the "administration" of countermeasures goes well beyond the simple physical provision of countermeasures to a recipient and extends to "activities related to management and operation" of countermeasure programs.

Here, the Complaint raises allegations relating to COVID-19 and covered countermeasures. Plaintiffs allege that Defendants failed to take appropriate safety measures, including the distribution and use of Personal Protective Equipment and monitoring employees and staff for COVID-19 symptoms.  Plaintiffs contend that Redwood Springs either did not implement certain safety procedures and protocols or negligently failed to follow them, including failing to provide PPE to staff and others at the facility, failing to require staff and others to use and/or monitor the use of PPE, and failing to timely test Esther Soliz and other residents for COVID-19 to isolate and separate infected individuals from

---

[2]  As established in Defendants Notice of Removal, Defendant is a "covered person", "qualified person"

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   non-infected individuals.  (RFJN Ex "A" pg. 4, ¶ 12.)  Thus, the Complaint contains allegations relating
2   to covered countermeasures, bringing this case within the preemptive and immunity provisions of the
3   PREP Act.

4          While Plaintiffs will argue these claims do not fall within the PREP Act, such claims by their
5   very nature indeed relate to the use of covered countermeasures and/or the management and operation of
6   Redwood Springs's countermeasures program, for which Defendant has immunity under the PREP Act.
7   Plaintiffs cannot allege Decedent's death was due to a failure to take appropriate safety measures to
8   prevent COVID-19 without implicating countermeasures under the PREP Act, such as PPE and
9   COVID-19 testing, since such measures are the main line of defense against and the centerpiece of any
10  infection control program used to prevent and treat the spread of the virus that causes COVID-19.
11  (RFJN, Exs. "L" through "DD" and "PP".)

12         This case is on point with *Garcia.*  In *Garcia,* Plaintiffs alleged that the facility "failed to
13  implement appropriate infection control measures or follow local or public health guidelines in
14  preparing for and preventing COVID-19 spread." *Id*. at *1.  The Honorable Judge James V. Selna of the
15  District Court for the Central District of California analyzed relevant law and then citing to the OGC
16  AO noted that "only instances of nonfeasance, i.e., where "defendant's culpability is the result of its
17  failure to make any decisions whatsoever, thereby abandoning its duty to act as a program planner or
18  other covered person" would the PREP Act not apply. *Id*. at *7.  Only "[t]otal inaction, therefore, would
19  not be covered by the PREP Act." *Id*.  Judge Selna found that the Complaint did not describe "instances
20  of nonfeasance" but instead referred to "momentary lapses." *Id* at *8 and *9.  Therefore, taken as a
21  whole, the Court found the allegations in the Complaint "directly related to covered countermeasures
22  within the meaning of the PREP Act" and dismissed the complaint. *Id*. at *8.

23         Here, Redwood Springs took steps to address the spread of the virus at the facility.  There was
24  no "failure to act" or institute infection control measures.  Thus, as in *Garcia*, this case does not involve
25  nonfeasance or total inaction but instead relates to manner in which Redwood Springs implemented
26  countermeasures, including those pertaining to PPE and COVID-19 testing.  Redwood Springs has thus
27
28  and "program planner." *See* RFJN Ex. "H", pgs. 12-13, ¶s 34-36.

-14-

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   established that PREP Act applies to Plaintiffs' claims thereby providing Defendants with immunity

2   under the Act.

3   **III.    FEDERAL JURISDICTION IS WARRANTED UNDER *GRABLE***

4         In addition to complete preemption, the HHS Secretary has now expressly declared that the

5   PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable*

6   doctrine because "there are substantial federal legal and policy interests within the meaning of [*Grable*],

7   in having a uniform interpretation of the PREP Act."  (RFJN Ex. "II"- 85 Fed. Reg. 79194.)   The

8   January 8, 2021 GC AO also emphasizes that "ordaining the metes and bounds of PREP Act protection

9   in the context of a national health emergency necessarily means that the case belongs in federal court."

10  (RFJN Ex. "HH" –AO 21-01, pgs. 4-5.)

11        The Secretary's pronouncement regarding *Grable*'s application to the PREP Act, entitled to

12  *Chevron* deference, is consistent with the Supreme Court's long-standing rule that federal question

13  jurisdiction will lie over state-law claims that implicate federal issues.  *Grable & Sons Metal Prod., Inc.*

14  *v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  The *Grable* Court laid out a two-step process for

15  determining whether a state law claim "arises under" federal law: (1) the state law claim must

16  necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts

17  must be able to entertain the state law claims "without disturbing a congressionally approved balance of

18  state and federal judicial responsibilities." *Id*. at 314.

19        Here, the first step is met through Plaintiffs' attempt to seek damages from Defendants for

20  claims relating to covered countermeasures which implicates disputed and substantial federal issues

21  under the PREP Act.  The second *Grable* prong is also met as federal jurisdiction over Plaintiffs' claims

22  will not disturb federal-state comity principles under *Grable*.  As set forth by the HHS Secretary in the

23  Fourth Amendment to his Declaration: "Through the PREP Act, Congress delegated to [HHS] the

24  authority to strike the appropriate Federal-state balance with respect to particular Covered

25  Countermeasures through PREP Act declaration."  (RFJN Ex. "II"- 85 Fed. Reg. 79190.)  Moreover, the

26  plain, statutory language of the PREP Act expresses a strong federal interest and a clear intention to

27  supersede or preempt state control of claims such as those brought by Plaintiffs.

28

-15-

## IV.   THIS COURT HAS JURISDICTION UNDER THE FEDERAL OFFICER STATUTE

Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a Defendant is sued for acts undertaken at the direction of a federal officer.  Removal is appropriate under Section 1442(a)(1), when the removing defendant establishes that: (1) defendant is a person; (2) defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal nexus between the plaintiff's claims and the defendant's actions under federal direction; and (4) defendant has raised a colorable defense based upon federal law.  *Goncalves v. Rady Children's Hospital San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

Courts have a duty to broadly interpret Section 1442 in favor of removal, which "should not be frustrated by a narrow, grudging interpretation" of the statute.  *Arizona v. Manypenny,* 451 U.S. 232, 242 (1981); *Goncalves,* 865 F. 3d. at 1244 (9th Cir. 2017).  Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum."  *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass' of Philadelphia*, 790 F.3d 457, 466 (3rd. Cir. 2015).  Moreover, contrary to Plaintiffs' assertion to the contrary, removability under Section1442(a) need not appear on the face of a well-pleaded complaint, and is proper where defendant/federal officer raises a "colorable federal defense."  *Jefferson County, Ala. v. Acker* 527 U.S. 423, 431 (1999).

### A.   Defendant Was "Acting Under" the Direction of a Federal Officer

The U.S. Supreme Court has held that the phrase "acting under" involves "an effort to *assist*, or help *carry out*, the duties or tasks of the federal superior."  *Watson v. Philip Morris Cos*., 551 U.S. 142, 152 (2007).  The "acting under" requirement is broad and is also to be liberally construed.  *Watson*, *supra*, 551 U.S. at 147.   "[R]emoval by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations."  *Cf. Bakalis v. Crossland Savings Bank,* 781 F.Supp. 140, 144-145 (E.D.N.Y. 1991).  "The rule that appears to emerge from the case law is one of 'regulation plus. . . '"  *Id*.  The 'acting under' requirement is met when the defendant is acting pursuant to detailed and ongoing instructions from a federal officer.  *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d. 387 (5th Cir. 1998).

-16-

With respect to the response to the COVID-19 pandemic, the federal government exercised unprecedented control and direction over skilled nursing facilities as members of the Nation's critical infrastructure.  Defendants' assistance to the federal government in its efforts to control the spread of COVID-19 went far beyond a mere response to federal regulation and satisfies the "instruction, direction or guidance" and "regulation plus test".

Prior to COVID-19, regulation of assisted living facilities was very general in nature.  In 1987, Congress enacted legislation, known as the Nursing Home Reform Act, requiring nursing homes participating in Medicare and Medicaid to comply with certain quality of care rules and regulations.  *See* 42 U.S.C. § 1396r, 42 U.S.C. § 1395i-3 and 42 C.F.R. § 483.1–483.95.  CMS contracts with state surveyors, including CDPH, to perform federal surveys to ensure that facilities accepting Medicare and Medicaid (Medi-Cal) payments comply with Federal laws and regulatory requirements. https://data.chhs.ca.gov/dataset/licensing-and-certification-district-offices-california.)   Generally, and prior to the pandemic, these surveyors conducted site visits to evaluate whether facilities are in compliance with Federal requirements and regulations.  *See* 42 U.S.C. § 1395aa; and 42 C.F.R. § 488.10.  If CMS surveyors found a "deficiency" in a facility's compliance with federal regulations, a deficiency or citation would be issued, and on occasion the CMS enforcement remedy of a "directed plan of correction" would be used under which the facility would develop and submit a plan of correction, which would then be enforced on behalf of CMS.

However, as a direct result of the COVID-19 pandemic and the designation of skilled nursing facilities as critical infrastructure, there was a clear and sudden paradigm shift.  In January 2020, in response to the public health emergency, CMS and the CDC began issuing detailed directives to healthcare facilities as part of the coordinated national effort to respond to and contain the COVID-19 pandemic.  CMS Surveyors were supervising skilled nursing facilities with respect to all aspects of infection control and the pandemic response and ensuring strict compliance with the CMS and CDC directives.  The issuance of up-to-date and evolving guidance in response to a public health emergency was in contrast to the role of CMS before the pandemic, which was focused on ensuring compliance with existing regulations.  Throughout the pandemic, CMS Surveyors specifically instructed facilities to take or not take particular clinical and operational actions in the absence of finding deficiencies that

**MEMORANDUM OF POINTS AND AUTHORITIES**

1    would otherwise require the facility to develop its own plan of correction.

2        Since the pandemic began, through the federal directives issued by the CDC and CMS, federal

3    authorities explicitly directed the operational decisions related to clinical pandemic response in skilled

4    nursing facilities.  Facilities were ordered to restrict visitation, cancel communal dining, and implement

5    active screening and staff for fever and respiratory symptoms.  Facilities were instructed on, among other

6    things, which patients and staff to test for COVID-19, under what circumstances to use and how to

7    conserve PPE, when to permit staff who had COVID-19 to return to work, how to mitigate staff shortages

8    including when to permit COVID-19 positive but asymptomatic staff to return to work, and how to handle

9    the isolation of residents infected with COVID-19 and those under investigation for COVID-19. (RFJN

10   Exs "L"-"O", "Q"-"S", "U"-"X", "Z"-"DD" and "OO".)  These very detailed clinical directives and

11   instructions represented a marked departure from the regulatory structure which existed before the

12   pandemic.  Targeted infection control surveys were conducted to ensure nursing facilities were

13   implementing the actions to protect the health and safety of residents. (RFJN "BB")  This oversight is

14   analogous to *Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620 at *3 (E.D. Tex. Feb. 11, 2021),

15   which held that a Tyson Foods meatpacking facility was "acting under" the direction of a federal officer

16   because Tyson Foods "exhibited 'an effort to help assist, or carry out, the duties and tasks'" of the federal

17   government by "working directly with the Department of Agriculture and the [Food Safety and

18   Inspection Service] to guarantee that there was an adequate food supply" during the COVID-19

19   pandemic.

20       Additionally, once COVID-19 began to spread, the federal government declared that healthcare

21   providers were "critical infrastructure" businesses that were obligated to aid the federal government in

22   preventing the spread of the virus during this unprecedented national emergency by following the

23   federal government's direction under its close supervision. (*See* Memorandum on Identification of

24   Essential Critical Infrastructure Workers During COVID-19 Response, CISA.gov, available at

25   https://www.cisa.gov/sites/default/files/publications/CISA-Guidance-on-Essential-Critical-

26   Infrastructure-Workers-1-20-508c.pdf.)  Designating activities as "critical infrastructure" enabled the

27   federal government to enlist the aid of these private parties to ensure the continued operation of the

28   healthcare infrastructure that is "so vital to the United States that [its] incapacity or destruction . . . would

-18-

have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e).  And when the federal government instructed these private parties on how to carry on their "critical" business during this national emergency, it enlisted them to carry out duty of the government itself to ensure the continued provision of "services critical to maintaining the national defense, continuity of government, economic prosperity, and quality of life in the United States." *Id.*; 42 U.S.C. § 5195c(b)(3).

During this time of crisis, there was a nationwide PPE shortage.  FEMA worked closely with businesses designated as "healthcare/public health" critical infrastructure to address the need for PPE and other critical supplies to continue operations in accordance with CDC guidance.  Congress expressly approved and supported the pervasive new role of the federal government in overseeing the operation of "critical infrastructure" skilled nursing homes and assisted living communities by allocating additional funding to such healthcare providers under the CARES Act to accommodate critical ongoing operations in light of the pandemic.

Also, at the very beginning of the COVID-19 crisis in the United States, the federal government enlisted skilled nursing facilities in its efforts to fulfill the government's task of ensuring that these facilities could assist in the safe transfer and admission of patients between healthcare facilities during an unprecedented national crisis.  In March 2020, it was reported that U.S. hospital beds were already maxed out (prior to COVID-19 hitting the hospitals) limiting healthcare facilities' ability to handle the "presumed" influx of COVID-19 patients. (https://www.webmd.com/lung/ news/20200326/us-hospital-beds-were-maxed-out-before-pandemic#1 .)

 Here, Defendants satisfy the first element for federal officer removal.  As part of the country's critical infrastructure, Defendants acted at all relevant times acted "to assist, or to help carry out, the duties or tasks of the federal superior," by helping the federal government "fulfill other basic governmental tasks" that otherwise "the Government itself would have had to perform," *Watson*, 551 U.S. at 153-54.

Similarly, Redwood Springs was designated as a "critical infrastructure."  At all relevant times, Redwood Springs was acting as part of the nation's critical infrastructure at the specific direction of federal authorities to address the on-going federal effort and national state of emergency to contain the

-19-
**MEMORANDUM OF POINTS AND AUTHORITIES**

COVID-19 pandemic and prevent the spread of the virus.  All actions taken by Redwood Springs in preparation for and in response to the COVID-19 pandemic, were taken "in an effort to assist, or help carry out, the duties or tasks" as ordered by the CDC and CMS, and CMS surveyors, and performed pursuant to the direct orders and comprehensive and detailed directives issued by these agencies. Redwood Springs was acting at the direction of the federal government to prevent, treat and contain COVID-19 at the facility and in its care and treatment of Ms. Soliz.

### B.   There is a Causal Nexus between Plaintiffs' Claims and the Actions taken by Defendant Pursuant to Federal Direction

To establish removal under the federal officer statute, a defendant must also show "a causal nexus between the plaintiff's claims and the defendant's actions under federal direction." *Winters*, *supra*, 149 F.3d at 398.  Plaintiffs' Complaint specifically alleges deficiencies in Defendant's response to the pandemic and the safety measures implemented in an effort to prevent the transmission and spread of COVID-19.  Such claims are directly related to the orders and directions issued by the federal government and Redwood Springs' designation and work as part of the nation's critical infrastructure. Redwood Springs was following the direction of the CDC, and CMS with respect to its response and preparedness for COVID-19.  Thus, there is a clear causal nexus between Plaintiffs' claims and the actions taken by Redwood Springs at the direction of the federal government.

### C.   Defendants Have Raised a Colorable Defense Based on Federal Law

Lastly, Defendants assert a colorable defense based upon federal law.  For removal, the defense must be "colorable" and need not be "clearly sustainable" as the purpose for the removal statute is to secure that the validity of the defense will be tried in federal court.  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

Defendants assert a federal defense in this case—namely, immunity under the PREP Act for their administration and use of "covered countermeasures."  In doing so, Defendants satisfy the "colorable federal defense" element of the federal officer removal statute.  A defendant need only show it has a plausible federal defense.  *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012).  Here, Defendants are immunized under the PREP Act for the conduct about which Plaintiffs complain.

The colorable federal defense element is also met where a defendant alleges its actions were justified as the defendant was complying with federal directives with respect to the alleged wrongful acts. *See Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994); *Mesa v. California*, 489 U.S. 121, 126-127 (1989); *see also Rural Community Workers Alliance v. Smithfield*, 459 F. Supp. 3d 1228, 1240-1241 (W.D. Mo. May 5, 2020) (finding that compliance with federal guidelines aimed to protect employees from COVID-19 exposure served as a defense to civil liability). Here, Redwood Springs was complying with Federal directives and regulations issued by CMS, CDC and the CMS surveyors, in responding to all aspects of the COVID-19 pandemic.

Dated: July 22, 2021

WILSON GETTY LLP

By: /s/ Evan J. Topol

William C. Wilson
Kim S. Cruz
Ryan G. Canavan
Evan J. Topol

Attorneys for Defendant SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER (erroneously sued and served as REDWOOD SPRINGS HEALTHCARE CENTER and SPRUCE HOLDINGS, LLC)

-21-

*__Monica Sterling, individually and as SII to the Estate of Esther Soliz, et al. v. Redwood Springs Healthcare Center, et al.__*
**United States District Court, Eastern District of California**
**Case No. 1:21−CV−00872−NONE−SKO**
**\*\*\***
**PROOF OF SERVICE**

I am employed in San Diego County.  I am over the age of 18 and not a party to this action.  My business address is 12555 High Bluff Drive, Suite 270, San Diego, California 92130.

On __July 22, 2021__, I served the foregoing documents, described in this action as:

- **DEFENDANT SPRUCE HOLDINGS, LLC dba REDWOOD SPRINGS HEALTHCARE CENTER'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

addressed as follows:

Warren R. Paboojian, Esq.
Jason S. Bell, Esq.
Baradat & Paboojian, Inc.
720 West Alluvial Avenue
Fresno, CA 93711
T: 559.431.5366
F: 559.431.1702
Email: wrp@bplaw-inc.com
Email: jsb@bplaw-inc.com
*Counsel for Plaintiffs*

**[X]    By CM/ECF ELECTRONIC DELIVERY:**    In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov.

**[X]    STATE:** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on __July 22, 2021__ at San Diego, California.

*F. Villalpando*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Felicia Villalpando

---

**PROOF OF SERVICE**